# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| REBECCA M. B, <br><br>        Plaintiff, <br><br>  v. <br><br>KILOLO KIJAKAZI, <br>Acting Commissioner of Social Security, <br><br>        Defendant. | Case No. 22 C 41 <br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rebecca B. seeks review of the final decision of the Acting Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). Rebecca requests reversal of the ALJ's decision and remand [17], and the Acting Commissioner moves for summary judgment affirming the decision [21]. For the following reasons, the Court reverses the ALJ's decision and remands this case for further proceedings consistent with this opinion.

## BACKGROUND

Born on February 15, 1978 Rebecca was 41 years old when she applied for DIB on September 21, 2019. Rebecca obtained her master's degrees in childhood development and childhood teaching. She previously worked as a head teacher in a pre-kindergarten program. Rebecca suffered spinal injuries due to motor vehicle accidents in 2009, 2010, and the spring of 2017, which resulted in herniated discs of the lumbar and cervical spine.[1] Rebecca continued to work until June 2017, when she was injured at work. In the summer of 2019, Rebecca underwent thoracic spine surgery and revision surgery due to cerebral spinal fluid ("CSF") leaks.

---

[1] "[A] herniated disc occurs when the tough exterior of the disc cracks and the jelly-like center of the disc pushes through." *Reid v. Colvin*, 2015 WL 3896973, at *2 (N.D. Ill. June 22, 2015) (citation omitted).

Rebecca alleges disability as of June 21, 2017 due to thoracic herniated discs, lumbar DOD post laminectomy syndrome,[2] lumbar herniated discs after durotomy repair, left lumbar and thoracic radiculopathy,[3] and CSF leak with spinal headache. Rebecca's claims were initially denied on February 26, 2020 and upon reconsideration on September 16, 2020. (R. 17). On July 28, 2021, the administrative law judge ("ALJ") held a telephone hearing, which Rebecca and her attorney attended, and vocational expert Kari Seaver-Reddy testified. *Id*. at 37-70. After the hearing, the ALJ sent Dr. Omar D. Hussamy, MB, B.Chir., M.D., CIME, medical interrogatories, *id*. at 2876-2887, and on August 9, 2021, he responded, *id*. at 2893-2905.

On September 22, 2021, the ALJ found Rebecca not disabled. *Id*. at 17-30.

The opinion followed the required five-step process. 20 C.F.R. § 404.1520. The ALJ concluded that Rebecca had the following severe impairments: degenerative disc disease of the lumbar and thoracic spine status post hemilaminotomy,[4] medial facetectomy,[5] and partial discectomy.[6] (R. 20). The ALJ concluded that Rebecca does not have an impairment or

---

[2] "Laminectomy is a type of back surgery performed to relieve nerve compression or nerve root injury in the spine caused by disc herniation or spinal canal narrowing related to degenerative changes." *Waterman v. Berryhill*, 2019 WL 1409845, at *2 (C.D. Ill. Mar. 28, 2019).

[3] "Radiculopathy is a condition caused by compression, inflammation and/or injury to a spinal nerve root. Pressure on the nerve root results in pain, numbness, or a tingling sensation that travels or radiates to other areas of the body that are served by that nerve." *Israel v. Colvin*, 840 F.3d 432, 435 (7th Cir. 2016) (citation omitted).

[4] Degenerative disk disease is "a condition in which a damaged [spinal] disc causes pain." *Charles S. v. Saul*, 2020 WL 489430, at *2 n.2 (S.D. Ill. Jan. 30, 2020) (citation omitted). A hemilaminotomy "is a procedure during which the neurosurgeon removes the lamina only on one side of the spinal canal, the side that requires decompression." *Snapper v. Unum Life Ins. Co. of Am.*, 2023 WL 2539242, at *6 (N.D. Ill. Mar. 16, 2023) (citation omitted).

[5] "A facetectomy is a surgical procedure to remove spine growths that affect a nerve in the spine." *Twyilla M. v. Berryhill*, 2018 WL 4268920, at *2 (S.D. Ind. Aug. 21, 2018).

[6] A discectomy is defined as "[e]xcusion, in part or whole, of an intervertebral disc." *Aschermann v. Aetna Life Ins. Co.*, 2011 WL 6888840, at *3 (S.D. Ind. Dec. 30, 2011), *aff'd*, 689 F.3d 726 (7th Cir. 2012) (*citing* STEDMAN'S MEDICAL DICTIONARY 550 (28th ed.1995)).

combination of impairments that results in any functional limitation(s) lasting at least twelve continuous months or that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. at 21-22. Under the "paragraph B" analysis, the ALJ found that Rebecca had only mild limitations in the functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. *Id*. at 21. Given Rebecca's degenerative disease, the ALJ considered Listings 1.15, Disorders of the skeletal spine resulting in compromise of a nerve root(s), and 1.16, Lumbar spinal stenosis resulting in compromise of the cauda equina. *Id*. at 22. The ALJ then determined that Rebecca had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations:

> No more than occasional pushing, pulling, or feeling with the left lower extremity; no more than occasional climbing of ramps or stairs; no climbing of ladders, ramps, or scaffolds; no more than occasional balancing, stooping, crouching, or crawling; no more than frequent kneeling; no work at unprotected heights; no work with moving mechanical parts; and occasional exposure to vibration; no commercial driving but can perform occasional driving otherwise; and can understand, remember, and carry out detailed but not complex instructions.

*Id*. at 22. The ALJ concluded that Rebecca is unable to perform her past relevant work, but there were jobs that existed in significant numbers in the national economy that Rebecca could perform, including sorter, assembler, packer, order clerk, and hand painter. *Id*. at 28- 29. As a result, the ALJ found Rebecca not disabled. *Id*. The Appeals Council denied Rebecca's request for review on November 5, 2021. *Id*. at 1-8.

## **DISCUSSION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Rebecca argues that the ALJ's decision should be reversed and remanded for two reasons. First, she contends that the ALJ erred by rejecting the disabling portion of the opinion of agency

4

medical expert Dr. Hussamy. Second, Rebecca asserts that the ALJ improperly discounted her subjective symptom allegations. The Court finds the ALJ's evaluation of the medical opinion evidence was not supported by "more than a mere scintilla" of evidence. *Biestek*, 139 S.Ct. at 1154. Because this issue warrants remand, the Court does not reach Rebecca's remaining argument.

### 1. Dr. Hussamy's Medical Opinion

On August 9, 2021, Dr. Hussamy responded to the ALJ's interrogatories and opined that Rebecca could sit for four hours and stand and walk two hours each in an eight-hour workday. (R. 2893-2905). He also opined that Rebecca could sit for four hours and stand and walk for two hours at one time without interruption. *Id.* The ALJ found his opinion "mostly persuasive" because it was consistent with and supported by the medical evidence, including the functional restrictions provided by Dr. Fisher. *Id.* at 28. But, the ALJ questioned why Dr. Hussamy opined that Rebecca could not sit more than four hours total in an eight-hour workday because the medical evidence did not show any persistent complaints related to sitting. *Id.* The ALJ speculated that it was "likely that Dr. Hussamy selected this limitation based on the standing/walking being limited to four hours, and thus filled the remaining portion of the eight-hour workday with sitting." *Id.* Finally, the ALJ did not find support for Dr. Hussamy's limitation to occasional kneeling because the record involved low back pain and not a knee condition. *Id.*[7]

The Court finds at least three errors in the ALJ's evaluation of Dr. Hussamy's opinion. First, the ALJ's evaluation of his medical opinion lacks sufficient analysis of the evidence. Here, the ALJ's evaluation of the medical opinions was subject to regulations pertaining to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under the regulations, the ALJ "will

---

[7] Rebecca has waived any argument regarding the ALJ's rejection of Dr. Hussamy's limitation to occasional kneeling. According to her, "the kneeling limitation need not be explored further here." Doc. 17 at 10; *see also Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) (undeveloped arguments are waived).

not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ need only articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several factors, including supportability, consistency, relationship with the claimant, specialization, and other factors that support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(a). An ALJ must explain how he considered supportability and consistency in his decision, but he is not required to explain how he considered the other factors. 20 C.F.R. § 404.1520c(b)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

In this case, the ALJ's evaluation of Dr. Hussamy's opinion is nearly devoid of any analysis. Regarding consistency and supportability, the ALJ stated only that Dr. Hussamy's opinion was consistent with and supported by the medical evidence, including the functional restrictions provided by Dr. Fisher. (R. 28). However, this sentence fails to discuss consistency and supportability with any elaboration or specificity. *See Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (the Seventh Circuit has repeatedly admonished ALJs to "sufficiently articulate [their] assessment of the evidence to assure us that [they] considered the important evidence and

6

... to enable us to trace the path of [their] reasoning."); *Jose V. v. Kijakazi*, 2022 WL 3139571, at *3 (N.D. Ill. Aug. 5, 2022) (concluding ALJ's failure to discuss supportability and consistency with any specificity was error). Even the reference to Dr. Fisher's functional limitations lacks a substantive explanation. (R. 1521).[8] For instance, the ALJ did not explain which of Dr. Fisher's limitations supported Dr. Hussamy's opinion. Moreover, the ALJ cited no records (other than Dr. Hussamy's own opinion) to support his analysis of Dr. Hussamy's opinion. *Id*. at 28. While the Court reads the ALJ's opinion as a whole, and ALJs need only minimally articulate their analysis, it does not mean that ALJs can recite the cold medical record upfront, and then make conclusions without analysis later in the opinion. *Hickman*, 187 F.3d at 689; *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (the ALJ must "engage sufficiently" with the medical evidence). Ultimately, the ALJ did not "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Thus, the ALJ's analysis was not supported by substantial evidence.

Second, the ALJ erred by ignoring conflicting evidence in the record of Rebecca's complaints about her difficulty sitting. An ALJ "must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Bakke v. Kijakazi*, 2023 WL 2473109, at *6 (7th Cir. Mar. 13, 2023) (quoting *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008)); *see also Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (An ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must consider all relevant evidence.). Here, the ALJ gave Dr. Hussamy's opinion less weight

---

[8] The ALJ did not specify which of Dr. Fisher's opinions he was relying on. However, the November 22, 2019 opinion, which the ALJ found partially persuasive, did not include a sitting opinion. (R. 27, 1521). On the other hand, Dr. Fisher's opinions in 2020 acknowledged Rebecca's difficulty sitting. *See id*. at 1638 (December 2020 opinion stated she has difficulty with prolonged sitting); *cf id*. at 1641 (September 2020 opinion pointed out "[s]he may be able to tolerate the sit down position.").

because it was supposedly inconsistent with the medical evidence that did not show Rebecca to have any persistent complaints related to sitting. (R. 28). However, Rebecca correctly argues that the medical evidence includes numerous examples of her complaints and difficulty sitting. *See* Doc. 17 at 9 (*citing* R. 408, 419, 1544, 1621, 1638, 1659, 1694, 1873, 1886, 1897, 1906, 1926-27, 1935, 1940, 1945, 1950, 1956, 1965, 2076, 2082, 2146-47). For example, her physical therapy evaluations post-surgery from December 2019 through January 2021 noted that she could only sit without symptom disruption for an hour or less. *Id.* at 1544, 1659, 1694. Likewise, her November 2019 progress notes stated, "[s]he can not tolerate the dental chair for this period of time due to her back pain." *Id*. at 1621.[9] More generally, providers also described Rebecca as sitting in a hunched forward position, appearing uncomfortable or in pain during appointments, and in constant, mild, or moderate distress. *See, e.g.*, *id*. at 419 ("in constant distress due to back pain"), 1906 ("She appears uncomfortable in the room. She is sitting on the exam table, but somewhat hunched over"). Ultimately, the ALJ did not grapple with any of this evidence, and as a result, the ALJ did not explain how these records undermined (or supported) Dr. Hussamy's opinion.

In addition, the ALJ entirely ignored other records that documented Rebecca's difficulty sitting. For example, in August 2019, Rebecca's progress note stated that she was "in moderate distress. She reports a headache when sitting. The headache appears when she lifts her head off the table from the supine position. When she sits in a chair, she has a headache." (R. 1400). In addition, another record from the same month noted that sitting up was an aggravating and precipitating factor. *Id*. at 2819. Further, a physical therapy report from 2020 stated, "she has pain and difficulty

---

[9] While the Acting Commissioner disagrees with the meaning behind this record and questions whether the procedure was scheduled, *see* Doc. 21 at 6-7, the Acting Commissioner cannot rely on post-hoc rationalizations that the ALJ did not employ. *See Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence.").

with prolonged standing, sitting, going up/down stairs and doing household chores." *Id*. at 1672. Because the ALJ identified no records in evaluating Dr. Hussamy's opinion, *id.* at 28, the Court does not view Rebecca's argument as a request to reweigh the evidence because the Court has nearly no evidence identified in the ALJ opinion to review. As such, this is a case where the ALJ failed to minimally articulate his reasoning and support his decision with substantial evidence.

Third, the ALJ improperly speculated about the meaning behind Dr. Hussamy's opinion. (R. 28). "Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999); *see also Sevec v. Kijakazi*, 59 F.4th 293, 300 (7th Cir. 2023) ("Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used."); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009) ("An ALJ's conjecture is never a permitted basis for ignoring a treating physician's views."). Here, Dr. Hussamy provided two relevant opinions: (1) Rebecca could sit for four hours in an eight-hour workday, and (2) she could sit for four hours at one time. (R. 2896). On one hand, there is arguably no ambiguity in the two opinions because Dr. Hussamy's opinion could be read to mean that Rebecca can sit for up to four consecutive hours total in a day, and if she had to, could do it all at one time, but that was the most she could sit. On the other hand, if the ALJ believed any ambiguity existed, the ALJ could have asked Dr. Hussamy for clarification rather than interpreting the opinions himself. As such, the ALJ's assumption that Dr. Hussamy's opinions were a mistake was in error, and the ALJ's attempt to re-write the opinions based on speculation was improper.

2. **State Agency Medical Opinions**

Dr. Vidya Madala, M.D., and Dr. Reynaldo Gotanco, M.D., reviewed the record in February and September 2020. The state agency experts opined that Rebecca would be capable of

9

performing work at the light exertional level with some postural and environmental limitations. (R. 71-87, 90-105). Both experts opined that she could sit (with normal breaks) for a total of "about 6 hours in an 8-hour workday." *Id*. at 80, 100. The ALJ found their opinions "partially persuasive, insofar as their limitations are consistent with a finding of not disabled." *Id.* at 28. However, the ALJ acknowledged that evidence submitted after the experts' opinions indicated that Rebecca's RFC was "more realistically limited to work at the sedentary exertional level."

The ALJ's analysis of the state agency opinions suffers from additional defects that further necessitate remand. Again, an ALJ must include an analysis of the medical source opinions, including the supportability and consistency factors for a state medical expert. 20 C.F.R. § 404.1520c(b)(2); *Patrice W. v. Kijakazi*, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) ("The ALJ thus failed entirely to explain the supportability of the consultants' opinions, and only identified a conclusion—as opposed to an explanation—with respect to the consistency of the consultants' opinions with the record."). Boilerplate language without further explanation is "entirely unhelpful." *Schmidt v. Colvin*, 545 F. App'x 552, 557 (7th Cir. 2013) (rejecting the conclusion that the opinion was "well reasoned and consistent with the body of evidence as a whole" because it "provides no indication of which portions of the record might actually be consistent" with the consultant's opinion).

Here, the ALJ found the state agency experts' opinions "partially persuasive, insofar as their limitations are consistent with a finding of not disabled." (R. 28). The ALJ's statement is not an adequate analysis because the word consistent in the sentence does not suffice as a consistency and supportability analysis as required by the regulation. *See* 20 C.F.R. § 404.1520c(b)(2). Instead, the ALJ provided a "conclusion, not a reason (or reasons)" supporting his conclusion. *Mueller v. Astrue*, 493 F. App'x 772, 776 (7th Cir. 2012) (rejecting a one-sentence declaration that

10

the doctor's opinion was inconsistent). Although the state agency experts opined that Rebecca could sit for six hours, the remaining portions of their opinions included no discussion or evaluation of Rebecca's ability to sit or the record evidence on the topic. The greater concern is that the ALJ engaged in "circular reasoning when he evaluated the weight of medical opinions based on their consistency with the RFC assessment." *Pytlewski v. Saul*, 791 F. App'x 611, 617 (7th Cir. 2019). By evaluating the state agency opinion to the extent they were consistent with a finding of not disabled, the ALJ put the proverbial cart before the horse and forced the medical opinions into a "foregone conclusion." *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).[10] As a result of the ALJ's circular and conclusory reasoning, the Court cannot follow the ALJ's rationale for accepting the state agency experts' opinions.

3. **Harmless Error**

Finally, the errors the Court has identified in the ALJ's review of the medical opinion evidence are not harmless. Harmless error occurs when "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" because remanding would be "a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Here, the ALJ's errors allowed him to find that Rebecca could perform sedentary work with limitations because Rebeca could sit for six hours in a workday. If the ALJ had analyzed Dr. Hussamy's opinion for supportability and consistency without ignoring contrary evidence, it is possible that the ALJ would have found a more restrictive RFC. In that case, the ALJ could have relied on the fact that Rebecca could only sit for four hours in a workday, which would have disqualified Rebecca from performing sedentary work and Rebecca could have been found

---

[10] Unlike *Pytlewski* and *Filus,* the error here is not harmless because the ALJ did not carefully review the evidence of Rebecca's ability to sit and perform sedentary work. 791 F. App'x at 617; 694 F.3d at 868.

disabled. *See Collins v. Astrue*, 324 F. App'x 516, 517 (7th Cir. 2009) ("sedentary work, which requires sitting for 6 hours and standing and/or walking for 2 hours during an 8–hour workday") (*citing* 20 C.F.R. § 404.1567(a); S.S.R. 83–10, 1983 WL 31251, at *5). Therefore, it is not predictable with great confidence that the agency would reinstate its decision.

Viewing the record as a whole, substantial evidence does not support the ALJ's decision based on the ALJ's failure to sufficiently explain his evaluation of the medical opinion evidence. Accordingly, this case must be remanded for further consideration. On remand, the ALJ must re-evaluate Dr. Hussamy's and the state experts' opinions and articulate his reasons for accepting or rejecting them, remaining mindful of the supportability and consistency factors and evidence in the record. Moreover, the ALJ may not ignore conflicting evidence nor use speculation to interpret Dr. Hussamy's opinion concerning Rebecca's ability to sit. The ALJ may send an additional interrogatory to Dr. Hussamy for clarification or request an additional medical opinion.

## CONCLUSION

For these reasons, Plaintiff's request for reversal and remand [17] is granted and the Acting Commissioner's motion for summary judgment [21] is denied. The ALJ's decision is reversed, and the case is remanded to the agency for further proceedings consistent with this Opinion.

**SO ORDERED.**

Dated: April 28, 2023

_____
Sunil R. Harjani
United States Magistrate Judge